**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

FAIRFIELD INDUSTRIES INCORPORATED
d/b/a FAIRFIELDNODAL,

    Plaintiff,

    v.

WIRELESS SEISMIC, INC.,

    Defendant.

Case No. 4:14-cv-02972-KPE

**WIRELESS SEISMIC, INC.'S PARTIAL MOTION FOR
<u>SUMMARY JUDGMENT OF INVALIDITY ON GROUNDS OF INDEFINITENESS</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    RELEVANT PROCEDURAL HISTORY ................................................... 2

III.   STATEMENT OF THE ISSUES ................................................................. 2

IV.   FACTUAL BACKGROUND .......................................................................... 2

V.    ARGUMENT SUMMARY ............................................................................ 4

VI.   THE SUPREME COURT'S *NAUTILUS* DECISION AND THE LEGAL STANDARD FOR SUMMARY JUDGMENT .................................................................. 5

VII.  ARGUMENT ..................................................................................................... 7

  A.  *Nautilus* Mandates a Finding that the Term "Substantially Prevent Communication Interference" Is Indefinite Because One of Ordinary Skill in the Art Would Be Unable to Determine the Bounds of the Term with Any Certainty ................................................ 7

    **1.  *The Patent Specification and File History of the '111 Patent Shed No Light on the Scope or Meaning of the Term.* ............................................... 7**

    **2.  *Fairfield Has Separate Patent Claims Directed to "Non-Interfering" Communication and Sought to Extend its Patent Reach by Injecting the Vague Term "Substantially".* ................................................................ 12**

    **3.  *Fairfield's Proposed Construction Is Highly Subjective and Reinforces the Indefiniteness of the Term.* ........................................................ 14**

  B.  The Term "Multiplexing Signature" is Indefinite Under *Nautilus* Because its Meaning Cannot be Determined with Reasonable Certainty. ................................ 15

  C.  The Lengthy Clause "So As to Form At Least Two Short-Range Radio Transmission Paths Between Adjacent Seismic Data Acquisition Units Emanating From a Plurality of Individual Units" is Entirely Nonsensical and Therefore Fatally Indefinite. ............... 18

  D.  The Court Should Not Rewrite Fairfield's Patent Claims to Fix Errors Caused by Fairfield Where the Terms are Subject to Multiple Reasonable Interpretations. .......... 19

    **1.  "[I]n the array" is subject to multiple interpretations. ......................... 21**

    **2.  "[S]aid antenna" is subject to multiple interpretations. ...................... 22**

  E.  The Remaining Claim Terms are Indefinite Because They Lack Antecedent Basis and Their Meaning is Not Readily Ascertainable. ..................................................... 23

    **1.  "[T]he other transmission path" is indefinite. ...................................... 23**

    **2.  "[A]nother seismic data acquisition unit" and "said seismic data acquisition units" are indefinite. ......................................................... 24**

VIII. CONCLUSION ................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdou v. Alphatec Spine, Inc.*,
　　No. 12-CV-1804, 2014 WL 6611422 (S.D. Cal. Nov. 19, 2014) ...........................................12

*Amgen, Inc. v. Chugai Pharm. Co.*,
　　927 F.2d 1200 (Fed. Cir. 1991)............................................................................................10

*Applied Med. Res. Co. v. U.S. Surgical Corp.*,
　　448 F.3d 1324 (Fed. Cir. 2006).............................................................................................2

*Broussard v. Go-Devil Mfg. Co. of La.*,
　　No. 3:08-CV-00125, 2014 WL 3377708 (M.D. La. July 9, 2014) .........................................12

*Celotex Corp. v. Catrett*,
　　477 U.S. 317 (1986)..............................................................................................................6

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
　　358 F.3d 1371 (Fed. Cir. 2004).............................................................................................19

*Cioffi v. Google Inc.*,
　　No. 2:13-CV-103, 2014 WL 4293978 (E.D. Tex. Aug. 28, 2014) .........................................12

*Cordis Corp. v. Boston Scientific Corp.*,
　　561 F.3d 1319 (Fed. Cir. 2009).............................................................................................6

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
　　412 F.3d 1291 (Fed. Cir. 2005).............................................................................................6

*Eibel Process Co. v. Minnesota & Ontario Paper Co.*,
　　261 U.S. 45 (1923)................................................................................................................7

*Ethicon Endo- Surgery, Inc. v. U.S. Surgical Corp.*,
　　149 F.3d 1309 (Fed. Cir. 1998).............................................................................................6

*Fargo Elecs., Inc. v. Iris, Ltd., Inc.*,
　　287 Fed. Appx. 96 (Fed. Cir. 2008)......................................................................................21

*Frazier v. Wireline Solutions, LLC*,
　　725 F. Supp. 2d 588 (S.D. Tex. July 16, 2010) ...................................................................19

*Halliburton Energy Servs. v. M-I LLC*,
　　514 F.3d 1244 (Fed. Cir. 2008).............................................................................................23

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
No. 11-569, 2014 WL 4248434 (D. Minn. Aug. 27, 2014) ........................................21, 24, 25

*Innovative Display Tech. LLC v. Acer, Inc.*,
No. 2:13-CV-522, 2014 WL 4230037 (E.D. Tex. Aug. 26, 2014) ...........................................12

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) .............................................................................7, 8, 11, 15

*KLA-Tencor Corp. Xitronix
Corp.*, No. A-08-CV-723, 2011 WL 318123 (W.D. Tex. Jan. 31, 2011) .........................12, 14

*Lemelson v. Gen. Mills, Inc.*,
968 F.2d 1202 (Fed. Cir. 1992) .............................................................................................20

*Light Transformation Tech. LLC v. Lighting Science Group Corp.*,
No. 2:12-CV-827, 2014 WL 3402125 (E.D. Tex. July 11, 2014) ...........................................12

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
No. 2:13-CV-655, 2014 WL 4352489 (E.D. Tex. Sept. 2, 2014) .....................................24, 25

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ................................................................................................. *passim*

*Novo Indus. L.P. v. Micro Molds Corp.*,
350 F.3d 1348 (Fed. Cir. 2003) .......................................................................................20, 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .............................................................................................18

*S.O.I. Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials*,
745 F. Supp. 2d 489 (D. Del. 2010) .......................................................................................12

*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*,
731 F.2d 818 (Fed. Cir. 1984) ...............................................................................................11

*Standard Oil Co. v. Am. Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985) ...............................................................................................11

*In re TR Labs Patent Litig.*,
No. 09–3883, 2014 WL 3500596 (D.N.J. July 14, 2014) .......................................................12

**Statutes**

35 U.S.C. § 112 ..............................................................................................................2, 5, 6, 25

## I.       INTRODUCTION

With the Supreme Court's landmark decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), and establishment of a new standard for patent claim indefiniteness, Fairfield can no longer hide behind the Federal Circuit's now-rejected "insolubly ambiguous" standard for indefiniteness. Under *Nautilus*, "a patent must be precise enough to afford clear notice of what is claimed" to avoid "a zone of uncertainty." *Id.* at 2129. Under the Supreme Court's new standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124.

The claims of Fairfield's patents use phrases designed to expand potential claim coverage without providing clear guidance in the intrinsic record as to the claim boundaries and thus do not pass muster under *Nautilus*:

- Fairfield asserts claims to a wireless system configured to "substantially prevent communication interference," and it is undisputed that Fairfield's patent specification fails to describe a single example of how to "substantially prevent communication interference," much less provide a standard that places objective boundaries on the scope of the term.

- Fairfield asserts claims to use of a "multiplexing signature" to reduce interference, where the term is not once mentioned in the patent specification and has no understood meaning to a person of ordinary skill in the art when applied to the disclosed embodiments.

- Finally, Fairfield contends that its patents have numerous "errors" which should be corrected by the Court. But it is black letter law that the Court cannot redraft claims where, as is the case here, the appropriate "fix" is unclear and open to various interpretations.

Fairfield's use of vague terms has real-world consequences. How are others in the field supposed to determine the boundaries of Fairfield's patent claims for purposes of both infringement and invalidity analyses? Such indefinite claims create, in the words of the Supreme Court, an impermissible "zone of uncertainty which enterprise and experimentation may enter

only at the risk of infringement claims" and thus the asserted claims are invalid for indefiniteness. *Id.* (internal quotations omitted).

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff Fairfield Industries Incorporated ("Fairfield") alleges that Defendant Wireless Seismic, Inc. ("Wireless Seismic") infringes four U.S. Patents: Nos. 7,124,028 ("the '028 Patent") (Ex. 1), 7,983,847 ("the '847 Patent") (Ex. 2), 8,296,068 ("the '068 Patent"), and 8,644,111 ("the '111 Patent") (Ex. 3). Discovery is underway. Fairfield filed its Opening Claim Construction Brief on December 8, 2014. Dkt. Nos. 82, 87. Because numerous claim terms in Fairfield's patents are indefinite under 35 U.S.C. § 112 ¶ 2, Wireless Seismic is filing the instant motion concurrently with its Responsive Claim Construction Brief.

## III.   STATEMENT OF THE ISSUES

ISSUE: Whether Wireless Seismic is entitled to summary judgment of invalidity on grounds of indefiniteness under 35 U.S.C. § 112 ¶ 2 with respect to certain terms of the patents-in-suit.

The Federal Circuit "review[s] a district court's grant of summary judgment de novo, reapplying the standard applicable at the district court." *Applied Med. Res. Co. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1331 (Fed. Cir. 2006) (citation omitted).

## IV.    FACTUAL BACKGROUND

Fairfield's patents generally relate to seismic sensor networks.[1] As described in the "Field of the Invention" section of the specification:

The present invention relates to seismic data acquisition, and more particularly to a method and system for transmitting data between multiple remote stations in an array and a data collection station utilizing a linked relay system to communicate therebetween permitting transmission paths to be altered.

---

[1] All four patents share a common description, but the patents have varying claim scope.

(*See* Ex. 3, '111 Patent, 1:22.) Although the patents discuss prior art systems used in the oil and gas industry for conducting "seismic surveys," the field of the invention is not so limited. Nothing in the described "Field of Invention" limits the field of the patent to "seismic surveys" or to the "oil and gas field." Moreover, the claims do not recite a "seismic survey" or "oil and gas exploration." These are merely applications or "fields of use" within the technological field of seismic sensor networks.[2]

The focus of Fairfield's alleged invention is on how the sensors forward their data to a collection point. Specifically, the patents discuss relaying data through the sensor network to a collection point using wireless technology. The first two issues presented in this brief relate to the wireless communications of the alleged invention.

The first of the four patents to issue was the '028 Patent. In relevant part, claim 1 recites subsets of communicating "seismic acquisition units" where the units in the subsets communicate "so that non-interfering radio transmission may be effected in each sub-set."

With the fourth patent to issue, the '111 Patent, Fairfield sought broader coverage than "non-interfering radio transmission." For the '111 Patent, Fairfield obtained claims reciting units communicating in a manner to "**substantially prevent** communication interference between the first and second pairs." The final clause of claim 16 is exemplary:

-------------------

[2] Wireless Seismic is submitting the Declaration of Dr. Loren Paul Clare, an expert in wireless communications with specific experience with wireless seismic sensor networks. The reason the field of invention must be properly defined is that Fairfield seeks to narrow the field to the "oil and gas exploration," which is an application of, or a field of use within, the technological field of seismic sensor networks. Dr. Clare is fully qualified to comment on the technology disclosed in the patents even though he has never worked in the "oil and gas" field (his work was in ground monitoring for military applications). However, it is unclear whether Fairfield intends to assert that Dr. Clare is not an expert in the relevant field (as Fairfield's narrow claim constructions would seem imply).

> wherein the first and second pairs or acquisition units are assigned first and second transmission parameters, respectively, ***to substantially prevent communication interference*** between the first and second pairs.

The phrase "substantially prevent communication interference" is not found in the specification of the '111 Patent. It is not defined or explained in the specification or file history of the '111 Patent.

In addition, dependent claims of the '111 Patent add the requirement that "the transmission parameters comprise multiplexing signatures." (*E.g.*, Ex. 3, '111 Patent cl. 21). The term "multiplexing signature" is also not found in the specification of the '111 Patent. Nor is it defined or explained in the specification or file history of the '111 Patent.

## V.      ARGUMENT SUMMARY

The claims in Fairfield's '111 Patent are drawn to systems and methods to "substantially prevent communication interference" between pairs of transmitters. These claims are indefinite because there is no objective measure for the "substantial prevention" of interference and the patent specification provides no guidance for understanding the boundaries intended by this phrase. Fairfield's proposed construction of the term, which is the prevention of interference "to the extent reasonably practical," is highly subjective and fails to provide any the clarity required by the patent law and the Supreme Court.

The term "multiplexing signature" is indefinite because the term has no meaning in the context of the technology of the '111 Patent and is not once mentioned in the patent specification. One of ordinary skill in the art would cannot determine what this term means in the context of the '111 Patent. It is a term borrowed from a recent Wireless Seismic patent and is simply not transferrable to the disclosure of the '111 Patent.

The unwieldy clause "so as to form at least two short-range radio transmission paths between adjacent seismic data acquisition units emanating from a plurality of individual units" is entirely nonsensical, and therefore indefinite. Finally, the Court should not redraft claims that contain numerous "errors" throughout the Fairfield patents because the appropriate "fix" is unclear and open to various interpretations.

## VI.    THE SUPREME COURT'S *NAUTILUS* DECISION AND THE LEGAL STANDARD FOR SUMMARY JUDGMENT

The Patent Act requires that a patent's claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. §112, ¶ 2. This is a statutory requirement of definiteness. Before the Supreme Court's *Nautilus* decision, the Federal Circuit found a claim definite "so long as the claim is 'amenable to construction,' and the claim, as construed, is not 'insolubly ambiguous.'" *Nautilus*, 134 S. Ct at 2124 (citation omitted).

However, on June 2, 2014, the Supreme Court issued its opinion in *Nautilus*, rejecting the Federal Circuit's prior indefiniteness standard which had stood for over a decade. The Supreme Court concluded that the Federal Circuit's formulation, "which tolerates some ambiguous claims but not others, does not satisfy the statute's definiteness requirement." *Id*. Under the Supreme Court's new standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id*. "It cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Id.* at 2130.

5

Public notice of the scope of patent claims is of paramount importance. Without a meaningful definiteness standard, "patent applicants face powerful incentives to inject ambiguity into their claims." *Id.* at 2129. The Supreme Court recognized that "[e]liminating that temptation is in order." *Id.* The Court reiterated that "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Id.* (citation omitted). "To tolerate imprecision just short of that rendering a claim 'insolubly ambiguous' would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone of uncertainty.'" *Id.* at 2130.

Under *Nautilus*, the intrinsic record of Fairfield patents must define the scope of the claims with reasonable certainty. Where Fairfield has drafted claims that do not provide reasonable certainty—whether due to overreaching or carelessness—such patent claims must be declared invalid pursuant to the Supreme Court's instructions in *Nautilus*.

Summary judgment shall be granted where the moving party shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). "Indefiniteness under 35 U.S.C. § 112 ¶ 2 is an issue of claim construction and a question of law." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009). It is thus appropriately resolved on motion for summary judgment. *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291 (Fed. Cir. 2005) (affirming district court's grant of summary judgment on indefiniteness).

## VII.   ARGUMENT

### A. *Nautilus* Mandates a Finding that the Term "Substantially Prevent Communication Interference" Is Indefinite Because One of Ordinary Skill in the Art Would Be Unable to Determine the Bounds of the Term with Any Certainty.

| "substantially prevent communication interference between the first and second pairs" '111 Patent: claim 1, 16 | |
| --- | --- |
| **Wireless Seismic** | **Fairfield** |
| Indefinite | "prevent communication interference between the first and second pairs to the extent reasonably practical" |

### 1.   *The Patent Specification and File History of the '111 Patent Shed No Light on the Scope or Meaning of the Term.*

The '111 Patent includes claims directed to wireless seismic data acquisition systems using pairs of transceivers that communicate with one another "at the same time." (Ex. 3, '111 Patent, cl. 1.) The claims further state that "transmission parameters" are assigned "to substantially prevent communication interference between the first and second pairs." This claim formulation is notably different than the formulation used in Fairfield's '028 Patent, the first of the four to issue. In the '028 Patent, the parameters were "set so that non-interfering radio transmission may be effected." (Ex. 1, '028 Patent, cl. 1.) The question before the Court is whether Fairfield's change from transmission parameters allowing "non-interfering radio transmission" to parameters set "to substantially prevent communication interference" is definite under the standard set out by the Supreme Court.

The patent law is clear that the term "substantially" in and of itself is not indefinite so long as the specification provides guidance for determining metes and bounds of the claim. *See, e.g.*, *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 65-66 (1923) (finding "substantial pitch" sufficiently definite because one skilled in the art "had no difficulty . . . in determining what was the substantial pitch needed") (cited by *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) ("Claim language employing terms of degree has long

been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention.")). The question is whether there is sufficient guidance in the intrinsic record (the specification and prosecution history) for determining the objective boundary between substantial prevention and insubstantial prevention in the context of communication interference. *Interval Licensing*, 766 F.3d at 1371. Because the phrase "substantially prevent" has no discernible meaning within the context of the '111 Patent and because the specification provides no guidance whatsoever, as mandated under *Nautilus*, the phrase is indefinite and any claims using that phrase are invalid.

The specification and file history of the '111 Patent shed no light on the scope or meaning of the phrase. In order to give proper notice to the public of the scope of patent claims, a patentee often acts as his own lexicographer by defining a chosen claim term. Fairfield chose not to provide any definition—neither the asserted claims nor the specification define the phrase "substantially prevent," or even provide any guidance to allow any objective reader to determine whether an accused or prior art system has "substantially prevented" interference.

The specification does not elaborate on how much interference must be prevented to meet the "substantially prevent" limitation, nor does it describe how transmission parameters are assigned to "substantially prevent" interference. Fairfield did not provide a single example in the specification illustrating the "substantial prevention" of interference—as opposed to complete prevention, as recited in the claims of the '028 Patent, for example.

There is no discussion in the specification or file history of any objective standard for determining whether communication interference has been "substantially prevented." Indeed, the terms "substantially" and "substantially prevent" **<u>only</u>** appear in the **<u>claims</u>** of the '111 Patent. There are simply no passages in the '111 Patent or file history that would inform, with

"reasonable certainty," those skilled in the art as to the scope of the term "substantially prevent communication interference."

The patent provides the following teachings regarding interference: The patent first states that parameters may be set to "minimize" interference. (Ex. 3, '111 Patent, 5:64-65.) The patent explains that "adjacent strings" may be set to different transmission parameters. (*Id.*, 5:66-6:4.) The patent then states that "non-adjacent strings" may be "sufficiently spaced apart so as not to interfere[] with one another." (*Id.*, 6:7-9.) The patent explains that given sufficient spacing, transmissions from one string "will not be received" by units in the non-adjacent string. (*Id.*, 6:10-15.) This is an example of non-interfering communications—in other words, the complete prevention of communication interference between communicating pairs.

The patent then states: "Those skilled in the art will understand that there are many transmission parameters that can be adjusted in this regard, including the non limiting examples of frequencies, time slots, power, methods of modulation, directional antenna gain, physical spacing of units and strings, etc." (*Id.*, 6:15-20.) Other than identifying various parameters that "can be adjusted," there is no disclosure of how such parameters would actually be adjusted to either "minimize" interference or eliminate interference or provide further explanation on what the patent means by "minimize" interference (other than minimizing interference down to zero).

The patent then provides a second example in which "interference between adjacent strings" may be "minimized by making transmissions in discreet data packages sent in short transmission bursts." (*Id.*, 6:20-23.) How this minimizes interference is conjecture. Thus, the only concrete example provided in the patent for eliminating interference is spacing units far enough apart to achieve complete non-interference such that transmissions "will not be received"

by distant units. Of course, interference would certainly be "minimized" if interference is completely prevented as described in the '111 Patent.

However, the patent specification has no disclosure concerning what is meant by "substantially prevent[ing] communication interference," much less an objective standard to determine the scope and boundaries of the term.[3] What level of interference prevention constitutes "substantially prevented?" What are the boundaries of "substantially prevent[ing"? How does one measure the amount of interference for substantiality? There is no objective standard for answering these questions. As Dr. Loren Clare explains, "substantially prevent" with respect to communication interference is not a term of art, and there is no accepted test for determining when interference has been substantially prevented.[4] (Clare Decl., ¶¶ 33-36.)

Even under the less stringent standard that preceded the Supreme Court's opinion in *Nautilus*, claims were held indefinite when there was no objective standard disclosed in the intrinsic record to determine the scope of a word of degree. *See, e.g., Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1217–18 (Fed. Cir. 1991) (the term "about" in "at least about 160,000 IU per absorbance unit" rendered the phrase (and the claim) indefinite where "nothing

---

[3] Fairfield's reliance on an FCC regulation is misplaced. First, the FCC regulation is neither cited nor mentioned in Fairfield's patent. Second, the FCC regulation relates to interference from outside devices, not between devices within a wireless system. 47 C.F.R. 15.5(b) ("[I]nterference must be accepted that may be caused by the operation of an authorized radio station, by another intentional or unintentional radiator, by industrial, scientific and medical (ISM) equipment, or by an incidental radiator."). Here, Fairfield's patent claims are drawn to the interaction of units within a system which is not addressed by the FCC regulation. Moreover, the FCC requirement does not address the question of when interference has been "substantially prevented."

[4] As Dr. Clare explains, the uncertainty of the term "substantially prevent" interference goes beyond the lack of a specified numerical boundary or quantification of the amount of interference permitted. (Clare Decl., ¶ 35.) The patent does not provide any guidance even as to a qualitative measure of what it means to "substantially prevent" interference. *Id.* Nor is there any discussion in the patent of the reason for "substantial prevention" as opposed to complete prevention. *Id.*

in the specification, prosecution history, or prior art provides any indication as to what range of specific activity is covered by the term 'about'"); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 453 (Fed. Cir. 1985) (affirming holding of indefiniteness because "'partially soluble' was too vague"). However, prior to *Nautilus*, when there was at least **some** objective standard to determine the scope of the word of degree, a term of degree did not render a claim indefinite. *E.g.*, *Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) ("When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree.").

Nevertheless, after the *Nautilus* decision, terms of degree are no longer definite simply because some standard could be formulated. "Although absolute precision or mathematical precision is not required, it is not enough as some of the language in . . . prior cases may have suggested, to identify '*some standard* for measuring the scope of the phrase.'" *Interval Licensing*, 766 F.3d at 1369-71 (citation omitted). Now, terms of degree are indefinite unless "the specification and the prosecution history . . . provide *objective boundaries* to those of skill in the art." *Id.* at 1371 (emphasis added) (relying on *Nautilus*, 134 S. Ct. at 2130 & n.8). Moreover, even had Fairfield provided an example, it may not have been enough to save the claims unless the example provides guidance for the full scope of the claim. *Id.* ("With this lone example, a skilled artisan is still left to wonder what other forms of display are unobtrusive and non-distracting.").

Because "substantially prevent communication interference" creates exactly the "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims," the asserted claims of the '111 Patent are invalid for indefiniteness. *Nautilus*, 134 S. Ct. at 2129 (citation omitted). This Court would not be the first to find claims indefinite after

*Nautilus* where a patent specification provides no guidance or objective boundaries on the scope of a claim. *See, e.g.*, *Abdou v. Alphatec Spine, Inc.*, No. 12-CV-1804, 2014 WL 6611422, at *8 (S.D. Cal. Nov. 19, 2014) (finding "defined anatomic position" indefinite); *Cioffi v. Google Inc.*, No. 2:13-CV-103, 2014 WL 4293978, at *22 (E.D. Tex. Aug. 28, 2014) (finding "critical file" indefinite); *Innovative Display Tech. LLC v. Acer, Inc.*, No. 2:13-CV-522, 2014 WL 4230037, at *26 (E.D. Tex. Aug. 26, 2014) (finding "quite small" indefinite); *In re TR Labs Patent Litig.*, No. 09–3883, 2014 WL 3500596, at *7 (D.N.J. July 14, 2014) (finding "increases and optimizes demand served" indefinite); *Light Transformation Tech. LLC v. Lighting Science Group Corp.*, No. 2:12-CV-827, 2014 WL 3402125, at *9 (E.D. Tex. July 11, 2014) (finding "axis of light direction" indefinite); *Broussard v. Go-Devil Mfg. Co. of La.*, No. 3:08-CV-00125, 2014 WL 3377708, at *7 (M.D. La. July 9, 2014) (finding "elongated drive housing" indefinite).

Even before the Supreme Court issued its *Nautilus* opinion, courts have held strikingly similar terms indefinite even under the laxer "insolubly ambiguous" standard recently rejected by the Supreme Court. *See, e.g.*, *KLA-Tencor Corp. Xitronix Corp.*, No. A-08-CV-723, 2011 WL 318123, at *3-5 (W.D. Tex. Jan. 31, 2011) (finding "to **substantially maximize** the strength of the output signals" indefinite because "there is no standard for determining what is substantially maximizing in the patent itself"); *S.O.I. Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials*, 745 F. Supp. 2d 489, 509 (D. Del. 2010) (finding "to **substantially limit diffusion** of gas from the semiconductor material substrate" indefinite because the specification did not indicate "how much diffusion is too much").

**2.**   ***Fairfield Has Separate Patent Claims Directed to "Non-Interfering" Communication and Sought to Extend its Patent Reach by Injecting the Vague Term "Substantially".***

In the '028 Patent, Fairfield obtained claims to parameters that would prevent interference (providing "non-interfering" transmissions). As discussed previously, the patent

specification explains that this means transmissions from one string "will not be received" by another string. ('111 Patent, 6:8-15.) Claim 1 of the '028 Patent recites "using a short range radio transmission technique having parameters set so that <u>non-interfering radio transmission</u> may be effected in each subset." Likewise, when Fairfield sought its '068 Patent, it recited in claim 1: "wherein the first set of transmission parameters and the second set of transmission parameters are selected to be <u>non-interfering</u> with one another."

After receiving two patents for seismic systems with "non-interfering" communication, Fairfield sought to expand its reach to systems where transmission parameters are assigned to "<u>substantially</u> prevent communication interference." This shift in focus is apparent in Fairfield's prosecution of the '111 Patent. Fairfield's application for the '111 Patent, filed in August 2012, originally sought claims directed to systems "wherein the first set of transmission parameters and the second set of transmission are selected to be <u>non-interfering</u> with one another." (Ex. 4, '111 Patent File History, August 8, 2012 claims, at claim 1.) Fairfield then shifted gears, cancelling its original claims in the '111 Patent application and opting instead to pursue claims directed to assigning transmission parameters "to <u>substantially</u> <u>prevent communication interference</u> between the first and second pairs." (Ex. 5, '111 Patent File History, Dec. 8, 2012 Preliminary Amendment.)

Fairfield inserted the indefinite term "substantially prevent communication interference" during prosecution to expand its patent coverage beyond its two issued patents directed to "non-interfering" communication. This is exactly the type of unfair conduct the Supreme Court sought to curtail in *Nautilus*. As the Supreme Court recognized, "absent a meaningful definiteness check . . . patent applicants face powerful incentives to inject ambiguity into their claims." *Nautilus*,

134 S. Ct. at 2129. The Supreme Court sought to "[e]liminate[e] that temptation" by placing the burden on the patent drafter "to resolve ambiguity" in patent claims. *Id.* (citation omitted).

Fairfield gave in to temptation. It could have resolved the ambiguity during patent prosecution through various means. Fairfield could have explained what the term "substantially prevent" meant and provided the necessary support in the patent specification. Fairfield could have amended the specification to describe some objective standard (assuming there was one) to imbue the term with meaningful boundaries. Fairfield could have used alternative claim language that provided clear notice to the public. Instead, Fairfield pursued claims that expanded its patent reach without providing the requisite clarity.

Fairfield's conduct has real-world consequences. In *KLA-Tencor Corp.*, the court posed a critical question that foreshadowed the Supreme Court's concern regarding a "zone of uncertainty":

> Most importantly, how can another inventor know what is covered by the term ["substantially maximizing"] and thus what would constitute infringement. The result would be ad hoc litigation each time KLA felt threatened by a competitor and thought the line was close enough that they could convince a jury it was 'substantially maximizing.' **This is not the purpose of the patent system**.

*KLA-Tencor Corp.*, 2011 WL 318123, at *4 (emphasis added). Here too, Fairfield's '111 Patent fails to inform competitors of what would constitute infringement, and thus should be found indefinite.

### 3. *Fairfield's Proposed Construction Is Highly Subjective and Reinforces the Indefiniteness of the Term.*

Fairfield proposes that the term be construed to mean "prevent communication interference between the first and second pairs **to the extent reasonably practical**." Dkt. No. 87 at p. 16 (emphasis added). Fairfield simply replaces one indefinite term ("substantially") with an indefinite clause ("to the extent reasonably practical"), reinforcing the indefiniteness inherent in

the original term. "Practical" is generally understood to mean sensible or pragmatic, and is a highly subjective term lacking any objective boundary, and therefore does not pass muster under *Nautilus*. *Interval Licensing*, 766 F.3d at 1369-71 (holding "unobtrusive manner" indefinite because it is "highly subjective and, on its face, provides little guidance to one of skill in the art"). Moreover, as the patent explains, it is possible to eliminate interference as claimed in the '028 and '068 Patents, thus any suggestion by Fairfield that communication interference between pairs of transmitters cannot be completely prevented would be false.

Indeed, Dr. Clare confirms that "to the extent reasonably practical" provides no objective guidance to one of skill in the art. (Clare Decl., ¶ 37.) As Fairfield acknowledges in its patent specification, there are many considerations when designing a wireless system, such as "memory requirements, the transmission requirements and the battery requirements, the overall cost, as well as the physical size and weight of each unit." (Ex. 3, '111 Patent, 9:26-29.) A change to any of these design considerations may dramatically impact the others. (*Id*.) Determination of whether communication interference has been prevented "to the extent reasonably practical" may be influenced by a host of design requirements, many of which are not even articulated in the specification or file history for the '111 Patent. Moreover, what is "reasonably practical" for one system designer may be quite different for another. (Clare Decl. ¶ 37.) In short, Fairfield's proposed construction is highly subjective and provides no objective guidance to one of skill in the art, thus reinforcing that the term "substantially prevent communication interference" is indefinite. "Reasonably practical" is subjective and has no objective measure.

**B. The Term "Multiplexing Signature" is Indefinite Under *Nautilus* Because its Meaning Cannot be Determined with Reasonable Certainty.**

| "multiplexing signature" '111 Patent: claims 5, 6, 10, 21, 22 | |
|---|---|
| **Wireless Seismic** | **Fairfield** |

| Indefinite | "information from which a multiplexing technique may be identified" |

Fairfield's '111 Patent includes claims directed to assigning a "multiplexing signature" to pairs of wireless units in order to "substantially prevent" interference. All claims that use the phrase "multiplexing signature" are invalid as indefinite because the term has no meaning in the context of the '111 Patent.

The specification does not use either of the terms "multiplexing signature" or "signature." There is absolutely no discussion about how the alleged invention would assign "multiplexing signatures" to different pairs of wireless units or how that would prevent interference (let alone "substantially prevent" interference).

As used in Fairfield's patent claims, a "multiplexing signature" is a parameter that affects communication interference. (*E.g.*, Ex. 3, '111 Patent at cl. 5 ("The method of claim 3, wherein the first and second transmission parameters [the parameters used to substantially prevent interference] each comprise a multiplexing signature.").) However, the specification does not even identify a "multiplexing signature" as a parameter that can affect interference. The '111 Patent has only a single passage listing parameters that may affect interference and the term "multiplexing signature" is conspicuously absent. (*Id.*,6:15-23 (listing "frequencies, time slots, power, methods of modulation, directional antenna gain, physical spacing of units and strings, etc.").)

Moreover, the term "multiplexing signature" (as distinct from a signature sequence) is not a term of art with a well-defined meaning to those in the field. (Clare Decl. ¶¶ 38-42.) The claims using the term "multiplexing signature" are indefinite because there was no way for one of skill in the art at the time of the alleged invention to determine what the '111 Patent means by that term. (Clare Decl. ¶¶ 38-42.) Accordingly, the use of this out-of-place term in the '111

16

Patent claims without providing any definition or guidance in the patent specification itself renders the "multiplexing signature" claims indefinite.

Fairfield did not use the term "multiplexing signature" in its original patent application filed on November 2003. Fairfield added the term nine years later, on December 18, 2012 (Ex. 2, '111 Patent File History, December 18, 2012 Preliminary Amendment), a few months after a Wireless Seismic patent that used the term issued. (Ex. 6, U.S. Patent No. 8,238,199 (issued on August 7, 2012).) However, the application that lead to Wireless Seismic's patent was filed years after the application to which Fairfield's '111 Patent claims priority, and Wireless Seismic's patent discusses the term throughout its specification. *Id.* In contrast, Fairfield's patents do not use the term at all. Moreover, in Wireless Seismic's patent, the "multiplexing signature" is related to pseudorandom sequences. (*Id.*; Clare Decl., ¶¶43-44.) The concept of pseudorandom sequences is also absent from the '111 Patent disclosure. (Clare Decl., ¶¶43-44.) Because the technologies are fundamentally different, even if one of skill in the art were allowed to look at Wireless Seismic's patent, it provides no guidance to what the term might mean in the context of Fairfield's earlier patent.

Fairfield also argues that the "claims themselves define 'multiplexing signatures,'" but there is no definition in the claims. The claims merely state that the parameters include multiplexing signatures—without any clarification whatsoever. Fairfield further argues that the term "multiplexing" is well understood. Even if true, that does not explain what a "multiplexing signature" is. Notably, Fairfield does not suggest that the term "multiplexing signature" itself is well understood.

Instead, Fairfield argues (without any support in the specification or otherwise) that "any modulation scheme" has "unique characteristics that can allow one to identify the particular

17

[multiplexing technique] being utilized." Dkt. No. 87 at 18. This is pure attorney argument with zero support. The '111 Patent certainly provides no guidance as to what multiplexing techniques have these identifying "unique characteristics" or what these "unique characteristics" are that "allows for the identification of the underlying multiplexing technique."

And finally, Fairfield provides no basis whatsoever suggesting that these alleged "identifying" characteristics "would be understood by those in the art as 'signatures' for that particular technique." For this proposition, Fairfield cites to lay dictionaries having nothing to do with multiplexing at all. This is precisely the resort to out-of-context dictionaries that the Federal Circuit has declared is improper. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) ("A claim should not rise or fall based upon the preferences of a particular dictionary editor, or the court's independent decision, uninformed by the specification, to rely on one dictionary rather than another."). In fact, one of skill in the art would not know, based on the teachings of the '111 Patent, what was meant by a "multiplexing signature." (Clare Decl. ¶¶ 38-42.)

### C. The Lengthy Clause "So As to Form At Least Two Short-Range Radio Transmission Paths Between Adjacent Seismic Data Acquisition Units Emanating From a Plurality of Individual Units" is Entirely Nonsensical and Therefore Fatally Indefinite.

| "so as to form at least two short-range radio transmission paths between adjacent seismic data acquisition units emanating from a plurality of individual units" '847 Patent, claim 8 | |
| --- | --- |
| **Wireless Seismic** | **Fairfield** |
| Indefinite | No construction necessary.<br><br>Alternatively, "so as to form at least two short-range radio transmission paths between adjacent seismic data acquisition units that come out from a plurality of the individual seismic data acquisition units." |

Fairfield contends that this lengthy claim term "simply describes" the claimed configuration. Dkt. No. 87 at 16. The claim language is far from "simple," and in fact is

18

nonsensical. First, the patent describes a single path between adjacent units. (Ex. 2, '847 Patent, 3:11-16.) There is no disclosure of two paths between adjacent units, or any explanation of what "two paths" between adjacent units would mean. Further, there is no explanation of how these two paths could "emanate" or "come out from" a plurality of other units. Figures 1 and 2 of the patent illustrates various paths and there is only one path between adjacent units. Fairfield's inability to offer a claim construction that explains what this phrase means is proof of its indefiniteness. Fairfield's "construction" essentially parrots back the phrase in dispute. *See Frazier v. Wireline Solutions, LLC*, 725 F. Supp. 2d 588, 594 (S.D. Tex. July 16, 2010) ("With no way for the bottom end of one bridge plug to connect with a bridge plug located *above* it, Claim 4 is nonsensical" and therefore invalid.).

### D. The Court Should Not Rewrite Fairfield's Patent Claims to Fix Errors Caused by Fairfield Where the Terms are Subject to Multiple Reasonable Interpretations.

| "in the array" '028 Patent, claim 1 | |
| --- | --- |
| **Wireless Seismic** | **Fairfield** |
| Indefinite | "in an array" |

| "said antenna" '847 Patent, claim 5 | |
| --- | --- |
| **Wireless Seismic** | **Fairfield** |
| Indefinite | "an antenna" |

Fairfield contends that its patents "contain a few obvious typographical errors ripe for correction" because the "corrections are not subject to any reasonable debate." Dkt. No. 87 at 12. However, the alleged "corrections" are very much subject to reasonable debate.

In effect, Fairfield asks this Court to rewrite its claims to fix "errors" in order to sustain their validity. However, the Federal Circuit has made clear that "courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Moreover, the Court cannot make the requested

"corrections" because the nature of the "errors" are not clear on the face of the patents, nor is it clear how the claims should be corrected.

Fairfield concedes that a district court can correct typographic errors only in very limited circumstances. Dkt. No. 87 at 12. Specifically, a district court can correct errors in a patent only if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus. L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003). Moreover, claims should be corrected only when the nature of the error is "evident from the face of the patent itself."[5] *Id.* at 1356-57. Claims are typically corrected only when there is an obvious printing error made by the PTO. *See, e.g.*, *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1203 n.3 (Fed. Cir. 1992) (adding the word "toy" to the preamble of a claim because "[t]he deletion of 'toy' appears from the record of the proceedings before the PTO to have been an inadvertent error when the patent was printed rather than an amendment to the claim"). Even in *Novo Indus.*, cited by Fairfield, the Federal Circuit concluded that the district court's correction of the grammatically incorrect claim term "stop means formed on a rotatable said with said support finger" was not appropriate because the nature of the error was not apparent on its face. *Novo Indus.*, 350 F.3d at 1358.

---

[5] As stated by the Federal Circuit in *Novo Indus.*, a district court has limited authority to correct errors in claims "where the error is not evident from the face of the patent itself" so as to allow "the PTO to bring its expertise to bear and consider whether such a correction is appropriate." *Novo Indus.*, 350 F.3d at 1357. The appropriate avenue is instead to seek a Certificate of Correction with the PTO. *Id.* at 1357 ("[M]ajor errors are subject only to correction by the PTO."). Fairfield never sought such a Certificate, and instead asks the Court to rewrite the claims.

Fairfield does not contend that the PTO is to blame for printing errors. To the extent there are "errors," responsibility lies with Fairfield and the "correct" interpretation of the claim is, as explained below, subject to reasonable debate. *Id.*; *Fargo Elecs., Inc. v. Iris, Ltd., Inc.*, 287 Fed. Appx. 96, 102 (Fed. Cir. 2008); *Honeywell Int'l Inc. v. ICM Controls Corp.*, No. 11-569, 2014 WL 4248434, at *8-10 (D. Minn. Aug. 27, 2014) (granting summary judgment of indefiniteness where it was clear that some language was missing from the preamble, and it was not clear how to correct the missing language where there were two plausible choices).

### 1.   "[I]n the array" is subject to multiple interpretations.

Independent claim 1 of the '028 Patent is directed to a method of using at least two of a plurality of seismic acquisition units "to transmit seismic data via short range radio transmission to another seismic acquisition unit <u>in the array</u>" and "to receive seismic data via short range radio transmission from another seismic acquisition unit <u>in the array</u>." Fairfield argues that the phrase "in the array" was supposed to say "in an array."  However, that is not the only reasonable interpretation (assuming it is reasonable in the first place), and it may be wrong—thereby precluding correction.

The claim recites in pertinent part:

> A. providing a plurality of seismic acquisition units, wherein each of said seismic acquisition units is capable of acquiring seismic data, receiving a short range radio transmission and transmitting a short range radio transmission;
> B. utilizing a at least two of said seismic acquisition units to transmit seismic data via short range radio transmission to another seismic acquisition unit **in the array**;
> C. utilizing a at least two of said seismic acquisition units to receive seismic data via short range radio transmission from another seismic acquisition unit **in the array**;

Step A recites providing a "plurality of seismic acquisition units." Step B recites using "at least two of the units" from Step A to transmit data to "another" unit "in the array." Under Fairfield's proposal, only the "another" unit would be appear to be required to be in "an array,"

but that construction is ambiguous. Is it the only unit in an array? May an array only have one unit? Does that imply that there are other unrecited units required to form the array? Notably, Fairfield did not suggest that the claim should be changed to "in an array, utilizing at least two . . . units to transmit . . . to another unit in the array." That is but one example of another possible "fix" that would provide a different meaning than the one Fairfield proposes. Or possibly, it is step A that is in error, and the claim was supposed to say "providing a plurality of seismic acquisition units in an array . . ." This possible "fix" would imbue the claim with yet another possible meaning different than the other two. Finally, if the recitation of "in the array" in step C is changed to "in an array" then the claim would appear to allow for the units in step B to be in a different array than step C, but there is no basis to know whether this "correction" and resulting change in meaning was intended by the original patent drafter.

Because the term "in the array" does not make sense as written and the selection of the proper "correction" is subject to reasonable debate, the term is indefinite and should not be rewritten, regardless of whether its lack of antecedent basis is the result of drafting error.

### 2.   "[S]aid antenna" is subject to multiple interpretations.

Claim 5 of the '847 Patent, which depends from claim 1, adds the limitation that "<u>said antenna</u> is molded into the casing." Fairfield contends that claim 5 "was plainly intended to recite 'an' antenna that had not yet been introduced." Dkt. No. 87 at 13. However, claim 4 recites "where in **each** seismic acquisition unit further comprises an antenna." It is not clear whether Fairfield's interpretation is correct (allowing for at least one antenna) or whether the claim was supposed to say "the antenna" as written (contrary to Fairfield's attorneys' statement of Fairfield's "plain intention"), but was supposed to depend from claim 4 and not claim 1. In other words, an equally plausible "correction" would be "The transmission system of claim 4 wherein

**said antenna** is molded into the casing." Because it is not clear which plausible correction is intended, the claim cannot be fixed and is indefinite.

### E. The Remaining Claim Terms are Indefinite Because They Lack Antecedent Basis and Their Meaning is Not Readily Ascertainable.

Additional terms in Fairfield's patents have technical defects that render the claims containing them indefinite. These claims lack proper antecedent basis and are so poorly drafted that there is no way for a person of ordinary skill in the art to understand what the claims are intended to cover. "[A] claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (*citing Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006)). As the Supreme Court instructed, a claim term is not definite simply because a court could "ascribe *some* meaning to a patent's claims." *Nautilus*, 134 S. Ct. at 2130 (emphasis in original). Here, each claim term is subject to more than one reasonable interpretation, and therefore, its intended meaning is not readily ascertainable.

### 1. "[T]he other transmission path" is indefinite.

| "the other transmission path" ||
| '028 Patent, claim 14 ||
|---|---|
| **Wireless Seismic** | **Fairfield** |
| Indefinite | No construction necessary |
|  | Alternatively, "any other transmission path" |

The phrase "the other transmission path" clearly contemplates that there are only two paths—a selected path and "the other" path. However, the claim from which this claim depends recites "identifying **at least** two separate transmission paths." Fairfield proposes one possible "fix" but an equally plausible fix is that the preceding claim should recite "identifying two separate transmission paths" instead of "at least two." The claim is therefore indefinite. *See, e.g.*,

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4352489, at *5 (E.D. Tex. Sept. 2, 2014) (finding "the at least one of the one or more computers" indefinite because the term was susceptible to more than one conflicting interpretation); *Honeywell Int'l Inc.*, No. 11-569, 2014 WL 4248434, at *8-10 (finding a claim lacked "reasonable certainty as to its scope" because there were two interpretations and the "two options entail[ed] differing limitations for the claim").

### 2. "[A]nother seismic data acquisition unit" and "said seismic data acquisition units" are indefinite.

| "another seismic data acquisition unit" ’847 Patent, claim 1 ||
|---|---|
| **Wireless Seismic** | **Fairfield** |
| Indefinite | No construction necessary<br><br>Alternatively, "said seismic data acquisition unit adjacent to the receiving unit" |
| "said seismic data acquisition units" ’847 Patent, claim 1 ||
| **Wireless Seismic** | **Fairfield** |
| Indefinite | No construction necessary<br><br>Alternatively, "said at least three wireless seismic data acquisition units" |

The claim recites a plurality of seismic acquisition units and then recites a "receiving unit" adjacent "to at least another seismic acquisition unit." "Another" means a different unit than previously recited. Does this mean that the receiving unit can be an acquisition unit and it is adjacent to "another" acquisition unit? Or does it mean that the receiving unit it adjacent to a different acquisition unit than the plurality of units recited earlier in the claim? The term "another" injects an ambiguity which cannot be resolved and thus the claim is indefinite.

In addition, element A of claim 1 recites "at least three" units. Element C recites that each of the [at least] three units are adjacent to "at least two" units, which requires at least one more

unit and possibly two depending on how Fairfield interprets this clause. Element D then recites "said seismic data acquisition units." Is this phrase referring to the original three units of element A or the totality of units including those of element A and element C? Fairfield suggests the former, but the latter is also a plausible interpretation. Because the bounds of the claim cannot be determined, it is indefinite. *See*, *e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4352489, at *5; *Honeywell Int'l Inc.*, No. 11-569, 2014 WL 4248434, at *8-10.

## VIII.   CONCLUSION

For at least the foregoing reasons, the Court should grant summary judgment of invalidity with respect to the foregoing terms in Fairfield's patents for failure to comply with the statutory definiteness requirement of 35 U.S.C. § 112.

Dated: December 22, 2014                Respectfully submitted,

                                 FISH & RICHARDSON P.C.

                    By:  */s/ Steven R. Katz*
                           Steven R. Katz (*pro hac vice*)
                           Attorney-in-Charge
                           BBO No.: 642732
                           katz@fr.com
                           Matthew C. Berntsen (*pro hac vice*)
                           BBO No.: 678533
                           berntsen@fr.com
                           One Marina Park Drive
                           Boston, MA 02210-1878
                           (617) 542-5070 (Telephone)
                           (617) 542-8906 (Facsimile)

                           Matthew A. Colvin
                           Texas Bar No. 24087331
                           colvin@fr.com
                           1717 Main Street, Suite 5000
                           Dallas, Texas 75201
                           (214) 747-5070 (Telephone)
                           (214) 747-2091 (Facsimile)

                           Brian G. Strand
                           Texas Bar No. 24081166
                           Southern District of Texas Bar No. 1838971
                           strand@fr.com
                           Fish & Richardson P.C.
                           One Houston Center
                           1221 McKinney Street, Suite 2800
                           Houston, TX 77010
                           (713) 654-5300 (Telephone)
                           (713) 652-0109 (Facsimile)

                          **COUNSEL FOR DEFENDANT**
                          **WIRELESS SEISMIC, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 22, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.1.


*/s/ Steven R. Katz* _____
Steven R. Katz